## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### Southern Division – Detroit

LITTLE CAESAR ENTERPRISES,
INC.,
   a Michigan corporation, and

LC TRADEMARKS, INC.,
   a Michigan corporation,

    Plaintiffs,

    v.

AJR 2, INC.,
   an Ohio corporation,

KARMBIR SINGH,
   a Michigan citizen, and

GURWANT SINGH,
   a Michigan citizen

    Defendants.

Case No. 2:22-cv-12172

## <u>COMPLAINT</u>

Plaintiffs Little Caesar Enterprises, Inc. and LC Trademarks, Inc. (collectively, "Little Caesar") bring this action for breach of contract, trademark infringement, unfair competition, and trade dress infringement. Little Caesar has terminated its Franchise Agreements with Defendants based on Defendants' breach of those Agreements by failing to provide multiple contractually required financial statements to Little Caesar, failing to operate their restaurants in accordance with Little Caesar's standards, and abandoning one of their restaurants. Despite the

termination, Defendants continue to hold themselves out as LITTLE CAESARS franchisees.

Defendants' continued, unauthorized use and enjoyment of Little Caesar's confidential business system and the LITTLE CAESARS trademarks, trade name, and trade dress breaches the Franchise Agreements and violates the Lanham Act, 15 U.S.C. §§ 1114, *et seq*. Little Caesar seeks injunctive, monetary, and other relief against Defendants for the reasons set forth below.

## THE PARTIES

1.     Plaintiff Little Caesar Enterprises, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan. It is engaged in the business of franchising independent businesspersons to operate LITTLE CAESARS restaurants throughout the United States. Little Caesar's franchisees are licensed to use the LITTLE CAESARS trade name, trademarks, and service marks and to operate under the LITTLE CAESARS System, which involves the production, merchandising, and sale of pizza, chicken wings, and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.     Plaintiff LC Trademarks, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan. LC Trademarks, Inc. is the owner

of the trademark, service mark, and trade name "LITTLE CAESARS," and related marks. It licenses these marks to Plaintiff Little Caesar Enterprises, Inc., which in turn licenses them to LITTLE CAESARS franchisees.

3.      Defendant AJR 2, Inc. is an Ohio corporation with a principal place of business in Monroe, Michigan. AJR 2 owned three LITTLE CAESARS franchises located in northwest Ohio (Store Nos. 3091-0001, 3091-0002, and 3091-0003), pursuant to Franchise Agreements with Little Caesar. The owners of AJR 2 are Defendants Karmbir Singh and Gurwant Singh, each a citizen and resident of Michigan.

4.      Defendant Karmbir Singh is a natural person and a citizen and resident of the State of Michigan. Karmbir Singh is an owner of AJR 2 and personally guaranteed its obligations under its Franchise Agreements with Little Caesar pursuant to executed personal guarantees.

5.      Defendant Gurwant Singh is a natural person and a citizen and resident of the State of Michigan. Gurwant Singh personally guaranteed the obligations of AJR 2 under its Franchise Agreements with Little Caesar pursuant to executed personal guarantees.

6.      Defendants AJR 2, Inc., Karmbir Singh, and Gurwant Singh are collectively referred to as "AJR 2."

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham

Act, 15 U.S.C. §§ 1116 & 1121; and 28 U.S.C. §§ 1331, 1338, & 1367(a).

8.      This Court has *in personam* jurisdiction over Defendants because they

reside in this district, conduct business in this district, and the events giving rise to

Little Caesar's claims occurred in this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and the

venue provision contained in the parties' Franchise Agreements.

## BACKGROUND FACTS

### Little Caesar

10.      Plaintiff Little Caesar Enterprises, Inc. is the franchisor of the LITTLE

CAESARS System.

11.      Plaintiff LC Trademarks, Inc. owns numerous federal registrations for

the mark "LITTLE CAESARS" and related marks. Among those registrations are

Registration Nos. 2036763, 2028607, 2259637, 3904450, 3925216, and others. Each

of these registrations is in full force and effect.

12.      Plaintiff Little Caesar Enterprises, Inc. has the exclusive license to use

and to license others to use the LITTLE CAESARS marks and trade name and has

used them at all times relevant to this action to identify its restaurants and the pizza

and other products associated with those restaurants.

13.     The trade dress of LITTLE CAESARS restaurants includes the signage, lettering style, color scheme, exterior appearance, floor plans, and décor (including, without limitation, menu boards, display racks, and servers' uniforms) that are featured at the restaurants operated by LITTLE CAESARS franchisees.

14.     The LITTLE CAESARS trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality, and is nonfunctional.

15.     The LITTLE CAESARS trademarks and trade dress are utilized in interstate commerce.

**The Parties' Rights And Obligations Under The Franchise Agreements**

16.     AJR 2 was formerly licensed to use the LITTLE CAESARS trademarks, trade name, trade dress, and business system in accordance with the terms of its Franchise Agreements with Little Caesar.

17.     Among those terms was the obligation to comply with Little Caesar's recordkeeping and reporting requirements, including but not limited to the obligations to:

a.     Prepare and preserve for at least four years, complete and accurate books, records, and accounts in accordance with generally accepted accounting principles and in the form and manner prescribed by Little Caesar.

(Franchise Agreement § 11.1.)[1]

b.    Provide Little Caesar with copies of financial statements showing the results of the operations of its LITTLE CAESARS franchises, within sixty days of the end of each fiscal year of the restaurants, in addition to state and federal tax returns related to its operation of its LITTLE CAESARS franchises, within five days of their filing. (*Id.* § 11.2.)

c.    Provide Little Caesar, on forms and in the manner prescribed by Little Caesar: (i) weekly reports of gross sales; (ii) financial statements on a quarterly basis, within thirty days after the end of each quarter; and (iii) such other data and information regarding the operation of its LITTLE CAESARS franchises as Little Caesar may require, within the time frames established by Little Caesar. (*Id.* § 11.3.)

d.    Provide Little Caesar, for review or auditing, such additional forms, sales reports, records, information, and data as Little Caesar may reasonably request, on the forms and in the manner as are reasonably requested by Little Caesar. (*Id.* § 11.4.)

18.    Furthermore, AJR 2 agreed that Little Caesar had the right to audit the

---

[1] Because the Franchise Agreements were executed in different years, the wording of and/or the section numbers for the provisions cited in this Complaint may vary from one Franchise Agreement to the other; however, the provisions are materially the same for the purposes of the Complaint. For ease of reference, the citations contained in this Complaint can be found in the most recent Franchise Agreement (the Franchise Agreement for Franchise No. 3091-0003).

books and records of its LITTLE CAESARS franchises at any time. (*Id.* § 11.5.)

19.     The Franchise Agreements also required AJR 2 to operate its franchised restaurants in accordance with the operational standards, procedures, and specifications prescribed by Little Caesar.

20.     Little Caesar provides each of its franchisees with a set of manuals and guidelines (collectively, the "Manuals"), which set forth in detail the procedures, methodology, and standards applicable to the operation of a Little Caesars restaurant.

21.     Taken together, the Manuals provide detailed and specific guidance and standards regarding the operation of a Little Caesars franchise.

22.     Among the Franchise Agreement provisions setting out required operational standards, procedures, and specifications are the following:[2]

> **5.1.   Importance of Compliance with System Standards**. Franchisee understands and acknowledges that every detail of the System and the Restaurant is essential to Franchisee, Little Caesar, and other System franchisees in order to (i) develop and maintain quality operating standards, (ii) increase the demand for the products and services sold by all franchisees operating under the System, and (iii) protect Little Caesar's reputation and goodwill. Franchisee shall maintain Little Caesar's high standards with respect to facilities,

---

[2] Because Jones' Franchise Agreements were executed in different years, the wording of or the section numbers for the provisions cited in this Complaint may vary from one Franchise Agreement to the other; however, the provisions are materially the same for the purposes of the Complaint. For ease of reference, the citations contained in this Complaint can be found in Jones' most recent Franchise Agreement (Franchise No. 3091-0003).

services, products, and operations.

. . .

**5.3.    Conformance to System Standards**. To insure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, procedures, and specifications as Little Caesar may from time to time prescribe in the Manuals or otherwise in writing. Franchisee shall refrain from (a) deviating from such methods, standards, procedures, and specifications without Little Caesar's prior written consent, and (b) otherwise operating in any manner which reflects adversely on the Proprietary Marks or the System.

5.3.1. Franchisee shall maintain in sufficient supply, and use at all times, only such products, equipment, materials, signs, menu items, ingredients, supplies, and paper goods, as conform to Little Caesar standards and specifications; and shall refrain from using non-conforming items;

5.3.2. Franchisee shall sell or offer for sale only such products and services as (a) meet Little Caesar's uniform standards of quality, (b) have been expressly approved for sale in writing by Little Caesar, and (c) have been prepared in accordance with Little Caesar's methods and techniques for product preparation. Franchisee shall sell or offer for sale all products and services required by Little Caesar in the Manuals or otherwise in writing as being part of the System. Franchisee shall not deviate from Little Caesar's methods, standards, procedures, and specifications regarding, without limitation, ingredients, recipes, methods of preparation and service, and weight and quality of products served. Franchisee shall discontinue selling and offering for sale any products or services which Little Caesar disapproves in writing at any time.

5.3.3. Franchisee shall purchase and install, at Franchisee's expense, all fixtures, furnishings, equipment, decor, signs, and other items as Little Caesar may reasonably direct from time to time in the Manuals or otherwise in writing; and shall refrain from installing or permitting to be installed on or about the Restaurant premises, any fixtures, furnishings, equipment, decor,

8

signs, or other items not previously approved as meeting Little Caesar's standards and specifications.

5.3.4. Franchisee shall display promotional signs or other written promotional materials or participate in other promotions, in the manner requested by Little Caesar. . . .

. . .

**5.5.   Maintenance of Restaurant Premises.**   Franchisee shall maintain the Restaurant premises (including adjacent public areas) in a clean, orderly condition and in excellent repair; and, in connection therewith, Franchisee shall, at its expense, make such additions, alterations, repairs, and replacements thereto (but no others without Little Caesar's prior written consent) as may be required for that purpose, including, without limitation, such periodic repainting, repairing, and replacing of obsolete or deteriorated signs, furnishings, fixtures, equipment, and decor as Little Caesar may reasonably direct by written notice to Franchisee. Franchisee shall complete all work specified in the notice within sixty (60) days after receipt of such notice.

23.   AJR 2 also covenanted to keep its restaurants open and in normal operation for at least such minimum hours and days as Little Caesar may specify and to devote its full time and best efforts to the management and operations of its restaurants. (*Id.* §§ 5.2, 15.1.)

24.   AJR 2 agreed that the failure to comply with the terms of the Franchise Agreements would constitute a default under the Agreements and that Little Caesar had the right to terminate the Agreements if AJR 2 failed to cure a default within the time required under the Agreements. (*Id.* § 13.3.)

25.   AJR 2 agreed that under certain circumstances Little Caesar had the right to immediately terminate the Franchise Agreements without providing an

opportunity to cure, including if AJR 2:

      a.    Committed three or more defaults, whether or not cured after notice, within a twelve-month period (*id.* § 13.2.10);

      b.    Refused to permit Little Caesar to inspect its books and records pursuant to Little Caesar's right to do so under the Franchise Agreements (*id.* § 13.2.19);

      c.    Breached any material term of the Franchise Agreements that was not by its nature curable, or that went to the essence of the Agreements (*id.* § 13.2.22); or

      d.    Ceased to operate or abandoned a franchise for a period of three consecutive days (*id.* § 13.2.2).

26.    In addition, AJR 2 agreed that Little Caesar had the right to terminate any other Franchise Agreement between AJR 2 or any of its affiliates and Little Caesar in the event that a Franchise Agreement between AJR 2 or its affiliate and Little Caesar was terminated for a default under that agreement. (*Id.* §§ 13.2.21, 13.4.)

27.    Furthermore, under the terms of the Franchise Agreements, AJR 2 agreed that its right to use Little Caesar's proprietary marks was limited to uses authorized by the Franchise Agreements, and that "any unauthorized use thereof shall constitute an infringement." (*Id.* § 7.2.5.)

28.     It agreed that it would use Little Caesar's proprietary marks, including but not limited to Little Caesar's trademarks, trade names, service marks, logos, emblems, trade dress, and other indicia of origin, "only in the manner authorized and permitted by Little Caesar." (*Id*. § 7.2.1.)

29.     AJR 2 was permitted to use Little Caesar's proprietary marks only in accordance with the LITTLE CAESARS System and the related standards and specifications, which "underlie the goodwill associated with and symbolized by the [p]roprietary [m]arks." (*Id.* § 7.1.3.)

30.     And it agreed that, during the term of the Franchise Agreements and after termination, it would not take any action "which may tend to derogate or jeopardize Little Caesar's interest" in Little Caesar's proprietary marks. (*Id.* § 7.3.2.) AJR 2 also covenanted not to "do or perform any other act injurious or prejudicial to the goodwill associated with the [p]roprietary [m]arks" and the LITTLE CAESARS System. (*Id.* § 15.2.1.)

## **Defendants' Post-Termination Obligations**

31.     AJR 2 agreed that, in the event that its Franchise Agreements were terminated, it would "immediately cease to operate" the restaurants and would not thereafter, directly or indirectly, "represent to the public or hold itself out as a present or former franchisee of Little Caesar." (Franchise Agreement § 14.1.)

32.     In addition, it agreed that it would immediately and permanently cease

to use, in any manner whatsoever, any products, ingredients, trade secrets, confidential methods, procedures, and techniques associated with the LITTLE CAESARS System and/or proprietary marks. (*Id*. § 14.2.)

33.    It also agreed to return to Little Caesar all of Little Caesar's confidential manuals and other confidential information. (*Id*. § 14.9.)

34.    AJR 2 agreed that, upon termination of the Franchise Agreements, it would not use "any designation of origin or description or representation which falsely suggests or represents an association or connection with Little Caesar." (*Id* § 14.5.)

35.    And it agreed to take any actions necessary to cancel any assumed name or equivalent registration that contains the LITTLE CAESARS Proprietary Marks, as the term is defined in the Franchise Agreements, and to furnish evidence of compliance within thirty days after the termination of the Agreements. (*Id.* § 14.3.)

36.    Under the Franchise Agreements, AJR 2 agreed that, upon termination, Little Caesar would have the option to purchase any or all of the furnishings, equipment, signs, fixtures, or supplies related to the operation of its franchised restaurants. In addition, it agreed to assign to Little Caesar, at its request, any interests it had in any lease for the restaurant premises. (*Id.* §§ 14.4, 14.10.)

37.    AJR 2 also agreed to a reasonable post-termination covenant against competition, which states that it may not, directly or indirectly, for itself or through,

on behalf of, or in conjunction with any person, persons, or legal entity "own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products," for a continuous uninterrupted period of one year following the termination of the Franchise Agreements (or a final court order regarding the same), in any Designated Market Area of any LITTLE CAESARS restaurant, and for a continuous uninterrupted period of two years following the termination of the Franchise Agreements (or a final court order regarding the same), in the Designated Market Area(s) in which its former LITTLE CAESARS restaurants are located. (*Id.* § 15.3.) AJR 2 further agreed that breaching this and any other covenants in the Franchise Agreements would cause Little Caesar irreparable injury for "which no adequate remedy at law may be available, and agree[d] to pay all court costs and attorneys' fees incurred by Little Caesar in obtaining injunctive or other equitable legal relief . . . ." (*Id.* § 15.4.)

38.    It agreed that it would pay to Little Caesar and its affiliates all sums owed, and Little Caesar's costs, expenses, and reasonable attorneys' fees incurred by reason of any default or termination of the Franchise Agreements, or the enforcement of AJR 2's post-termination obligations. It also agreed to pay Little Caesar liquidated damages. (*Id*. §§ 14.6, 14.7, 14.8, 15.4, 23.9.)

39.     Pursuant to the personal guarantees attached as Exhibit A to the Franchise Agreements, Defendants Karmbir Singh and Gurwant Singh agreed to be personally bound by the covenants and obligations of the Franchise Agreements, including the obligation to pay Little Caesar and its affiliates and the obligation to comply with the post-termination covenant against competition.

## Defendants' Defaults Under Their Franchise Agreements And The Termination Of Their Franchise Agreements

40.     On May 4, 2022, Little Caesar inspected AJR 2's restaurants and found numerous violations of Little Caesar's operational standards, including but not limited to those involving health, food safety, and sanitation.

41.     AJR 2 received copies of the Operations Review completed during the inspections which noted, by category, each violation and also provided comments that further explained many of the violations. Little Caesar then sent AJR 2 a Notice of Default and Notice to Cure dated June 13, 2021, that listed the various health, safety, and critical operational defaults that Little Caesar had observed at the restaurants. This Notice again informed AJR 2 that its Franchise Agreements would be terminated unless it came into compliance with Little Caesar's operating standards.

42.     Little Caesar also conducted an audit of AJR 2's franchises in early 2022. Despite its obligations under the Franchise Agreements, AJR 2 failed to provide several requested documents, including: consolidated year-end financial

records for 2017; year-end complete payroll records for 2019, 2020, and 2021; and quarterly financial records for 2021.

43.     Following the audit, Little Caesar sent AJR 2 a Notice of Default and Notice to Cure also dated June 13, 2022. The Notice informed AJR 2 that it was in default of its Franchise Agreements and that its Franchise Agreements would be terminated unless it produced the required documents.

44.     Little Caesar reinspected AJR 2's restaurant nos. 3091-0001 and 3091-0002 on July 29, 2022. Although Little Caesar attempted to reinspect restaurant no. 3091-0003 the same day, that restaurant was closed without authorization. In the restaurants Little Caesar was able to inspect, it found that AJR 2 had failed to cure many of the defaults noted in the prior Notice to Cure. Once again, products and ingredients were not marked for expiration and products were sold past the expiration time; ingredients were not stored at least six inches off the floor; proper portioning procedures were not followed; wash/sanitize buckets were not set up at the appropriate stations; sheetouts were being stored in the walk-in cooler; unapproved marketing materials were present; and generally low product quality and cleanliness levels were observed. New defaults were also observed. AJR 2 again received a copy of the Operations Reviews completed during the inspections identifying specific deficiencies in the restaurants that deviated from Little Caesar's specifications and requirements.

45.     In addition, AJR 2 has failed to produce any additional financial documents following its receipt of the June 13 default notice concerning those records.

46.     Finally, as above, it has come to Little Caesar's attention that AJR 2 has ceased operating Store No. 3091-0003, without Little Caesar's approval.

47.     Accordingly, by Notice of Default and Notice of Franchise Agreement Termination dated August 31, 2022, Little Caesar terminated AJR 2's Franchise Agreements effective immediately upon AJR 2's receipt of the notice.

48.     The Termination Notice informed AJR 2 that Little Caesar would not enforce the termination by itself, but instead would submit the matter to a court for judicial enforcement. AJR 2 elected to continue to operate its franchises, in violation of its post-termination obligations, pending judicial enforcement of the termination.

49.     AJR 2's actions have caused and continue to cause monetary damage and irreparable harm to Little Caesar, including harm to Little Caesar's reputation and goodwill.

## COUNT I
## Breach of Contract

50.     The allegations of paragraphs 1 through 49 are hereby incorporated by reference.

51.     The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreements cited herein, including the

post-termination obligations.

52.     These breaches constitute good cause for terminating the Franchise Agreements.

53.     As a direct and proximate result of these actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT II
## Trademark Infringement

54.     The allegations of paragraphs 1 through 53 are hereby incorporated by reference.

55.     The use in commerce of Little Caesar's trademarks and trade names by the Defendants outside the scope of the Franchise Agreements and without Little Caesar's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of the Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Little Caesar. Such unauthorized use of Little Caesar's trademarks and trade names infringes its exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

56.     The acts of the Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

57.     As a direct and proximate result of the Defendants' actions, Little

Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

**COUNT III**
**<u>Unfair Competition</u>**

58.　　The allegations of paragraphs 1 through 57 are hereby incorporated by reference.

59.　　The use in commerce of Little Caesar's trademarks, trade names, and trade dress by the Defendants outside the scope of the Franchise Agreements and without the consent of Little Caesar is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities. Such unauthorized use of Little Caesar's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

60.　　The acts of the Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

61.　　As a direct and proximate result of the Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV
## Trade Dress Infringement

62.    The allegations of paragraphs 1 through 61 are hereby incorporated by reference.

63.    The Defendants' restaurants are identified by signs, exterior appearance, packaging, containers, and other items on which the LITTLE CAESARS proprietary marks appear in the same distinctive style and color scheme as Little Caesar uses for the pizza restaurants operated by Little Caesar's licensees.

64.    The Defendants' use of trade dress that is identical or confusingly similar to the LITTLE CAESARS trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of the Defendants' restaurants, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their restaurants with the LITTLE CAESARS restaurants operated by Little Caesar's licensees. Such adoption of Little Caesar's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

65.    The Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

66.    As a result of the Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

19

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A.      Enter a declaratory judgment holding that Defendants' conduct violated the terms of the Franchise Agreements and constitutes good cause for terminating the Franchise Agreements;

B.      Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements as of the effective date of Little Caesar's Notice of Franchise Agreement Termination, or as otherwise provided by applicable law;

C.      Enter an order enjoining Defendants, and all those acting by, through, or in concert with them, by preliminary and permanent injunction, from using the LITTLE CAESARS trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Little Caesar;

D.      Enter an injunctive order directing Defendants, and all those acting by, through, or in concert with them, to comply with all applicable post-termination obligations as provided in the Franchise Agreements, including but not limited to promptly paying all sums owed to Little Caesar and its affiliates, complying with the post-termination noncompete, complying with any request from Little Caesar to purchase any equipment or other assets of the franchise, and taking all steps to transfer their leasehold interests in the franchise to Little Caesar or its designee in the event that Little Caesar elects to exercise any rights it or any of its affiliates or

subsidiaries might have in such interests;

E.      Award Plaintiffs judgment against Defendants for the damages Plaintiffs have sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F.      Enter judgment in favor of Plaintiffs for the damages they have suffered, including liquidated damages as provided for by the Franchise Agreements, as a result of Defendants' conduct, plus prejudgment interest allowed by law;

G.      Award Plaintiffs their costs and attorneys' fees incurred in connection with this action, pursuant to the Franchise Agreements and Section 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs incurred in conducting any and all necessary inspections; and

H.      Award Plaintiffs such other relief in its favor as this Court may deem just and proper.

21

_/s/Larry J. Saylor_

Larry J. Saylor (P28165)
Kimberly A. Berger (P56165)
MILLER, CANFIELD, PADDOCK
 & STONE P.L.C.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7986
Facsimile: (313) 496-8454
Saylor@millercanfield.com
Berger@millercanfield.com

Robert L. Zisk (admitted in E.D. Mich.)
Justin L. Sallis (admitted in E.D. Mich.)
LATHROP GPM LLP
The Watergate
600 New Hampshire Avenue, N.W. – Suite 700
Washington, D.C. 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250
robert.zisk@lathropgpm.com
justin.sallis@lathropgpm.com

_Attorneys for Plaintiffs_